UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
G. KENNETH COULTER, JOHN SIEFKEN,
GREGORY MAJOR, MICHAEL CHIEKO,
ELI MOND, JOHN SUDOLSKY, on behalf
of themselves and all others similarly
situated,

                 Plaintiffs,

        v.                        11 Civ. 1849 (DAB)
                                 OPINION

MORGAN STANLEY & CO., INC. et al.,

                 Defendants.

-------------------------------------X
DEBORAH A. BATTS, United States District Judge.


     This class action is brought by participants in the Morgan
Stanley 401(k) Plan ("401(k) Plan") and the Morgan Stanley
Employee Stock Ownership Plan ("ESOP") (collectively the "Plans")
against Defendants Morgan Stanley ("Morgan Stanley" or the
"Company"), Morgan Stanley & Co., Inc. ("MS & Co."), Karen
Jamesley, Morgan Stanley's Global Director of Human Resources
("Jamesley"), John Mack, the Chairman of Morgan Stanley's Board
of Directors and Morgan Stanley's Chief Executive Officer
("Mack"), members of MS & Co.'s Board of Directors (the "MS & Co.
Board"), and members of the Investment Committee (the "Investment
Committee Defendants") (collectively, the "Defendants").

     Plaintiffs allege Defendants violated their fiduciary duties
under the Employee Retirement Income Security Act of 1974

("ERISA") from September 15, 2008 through December 31, 2008 (the "Class Period").[1]  In particular, Plaintiffs allege that (1) Defendants failed to manage prudently and loyally the Plans' assets, (2) Morgan Stanley and Jamesley failed to provide complete and accurate information,[2] (3) Defendants breached their duty to avoid conflicts of interest, (4) Morgan Stanley, MS & Co., the MS & Co. Board, and Mack failed to monitor adequately other fiduciaries and to provide them with accurate information, and (5) Defendants have co-fiduciary liability.

Defendants have moved to dismiss the Corrected Amended Class Action Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).  For reasons that follow, Defendants' Motion to Dismiss is GRANTED in its entirety.

---

[1] In their Complaint, Plaintiffs allege the Class Period began January 1, 2008.  In a letter dated April 26, 2012, Plaintiffs notified the Court that they wished to limit the Class Period from September 2008 through December 31, 2008, indicating that they could submit a redlined version of the Complaint. After the Court requested a redlined copy, Plaintiffs submitted a letter to the Court, dated November 20, 2012, indicating that they wanted the Class Period to begin on September 15, 2008.

[2] Plaintiffs clarified, in a November 20, 2012 letter to the Court, that their claim for breach of the duty of candor is limited to only Morgan Stanley and Jamesley.

2

I.    BACKGROUND

    A.    Procedural History

    Plaintiffs commenced a related action before this Court, asserting similar claims for breaches of ERISA fiduciary duties. In re Morgan Stanley ERISA Litig., No. 07 Civ. 11285 ("Related Action").  After Judge Robert W. Sweet denied a motion to dismiss, discovery commenced.  In re Morgan Stanley ERISA Litig., 696 F. Supp. 2d 345 (S.D.N.Y. 2009) ("Morgan Stanley"). Magistrate Judge Andrew J. Peck limited the scope of discovery to the period before the Related Action's amended complaint was filed in June 2008.  Shortly thereafter, on March 16, 2011, Plaintiffs filed the instant matter; they amended the Complaint on September 27, 2011.  Defendants filed their Motion to Dismiss on October 28, 2011, which was fully submitted on January 18, 2012.

    In light of two Second Circuit decisions, In re Citigroup ERISA Litigation, 662 F.3d 128 (2d Cir. 2011) ("Citigroup") and Gearren v. McGraw Hill Cos., 660 F.3d 605 (2d Cir. 2011), on February 28, 2012, the Court granted the defendants in the Related Action leave to filed a renewed motion to dismiss, which was filed on March 26, 3012.  On March 30, 2012, the Court denied Plaintiffs' request to consolidate this instant Complaint with the Related Action.

B.    Parties

The following facts alleged in the Complaint are assumed to be true for the purposes of the Motion to Dismiss before the Court.

This action is brought by and on behalf of participants in the 401(k) Plan and the ESOP, who held Morgan Stanley stock in their individual 401(k) Plan or ESOP accounts during the Class Period.  (Compl. ¶¶ 14-19.) Plaintiffs allege that all Defendants were fiduciaries of the Plans during the Class Period.  (Compl. ¶ 20.)

Morgan Stanley is a financial services company headquartered in New York, New York.  It provides its clients and customers with financial advisory services, investment advisory services, global asset management products and services in equity, fixed income, alternative investments, and private equity.  (Compl. ¶ 21.) Morgan Stanley is the ESOP's sponsor.  (Compl. ¶ 23.)

MS & Co., a wholly-owned subsidiary of Morgan Stanley, is headquartered in New York, New York.  (Compl. ¶ 28.)  As part of Morgan Stanley's Global Wealth Management Group, MS & Co. is Morgan Stanley's primary broker-dealer in the United States. (Compl. ¶ 28.) MS & Co. is the 401(k) Plan's "sponsor." (Compl. ¶ 29.)

Karen Jamesley was Morgan Stanley's Global Director of Human

4

Resources and the Plan Administrator of the 401(k) Plan and the ESOP during the Class Period.  (Compl. ¶¶ 25-26.) John J. Mack, was Morgan Stanley's Chief Executive Officer and its Chairman of the Board during the Class Period.  (Compl. ¶ 27.)

Walid A. Chammah, Charles Chasin, James P. Gorman, Ellyn A. McColgan, Michael J. Petrick, Richard Portogallo, Neal A. Shear, and Cordell G. Spencer were members of the MS & Co. Board of Directors during the Class Period.  (Compl. ¶ 31.)

During the Class Period, the Plans' management was in the hands of the Investment Committee, members of which were appointed by and served at the pleasure of the MS & Co. Board. (Compl. ¶ 32.) Under the Plans' terms, the Investment Committee consisted of no fewer than three persons, each of whom was an employee or advisory director of Morgan Stanley or MS & Co. (Compl. ¶ 32.) Michael Rankowitz, Thomas C. Schneider, Michael T. Cunningham, R. Bradford Evans, Kirsten Feldman, Edmund C. Puckhaber, William B. Smith, and Caitlin Long served as members of the Investment Committee during the Class Period.  (Compl. ¶ 33.)

Additionally, Plaintiffs' Complaint names unknown "John Doe" Defendants 1-10, individuals including members of the Investment Committee and officers, directors and employees of Morgan Stanley and MS & Co.  These John Doe Defendants were fiduciaries of the

Plans during the Class Period, but their identities are currently
unknown to Plaintiffs.  (Compl. ¶ 34.)

    C.    The Plans

    Judge Sweet thoroughly described the 401(k) Plan and the
ESOP, including employee eligibility and the allocation of
employee and Company contributions.  Morgan Stanley, 696 F. Supp.
2d at 351-52.  The same 401(k) Plan and ESOP are at issue in the
instant matter before the Court.  Both Plans appointed Morgan
Stanley's Global Head of Human Resources, Karen Jamesley, as Plan
Administrator.  (Compl. ¶¶ 41, 44, 54; Wise Decl. Ex. E, 401(k)
Plan § 2 ("401(k) Plan"); Wise Decl. Ex. F, ESOP § 1.34
("ESOP").) The Investment Committee was a named fiduciary of the
401(k) Plan.  (Compl. ¶ 48; 401(k) Plan § 8(f)(i).)

    Before August 31, 2008, the Plans' assets were combined and
commingled in the Morgan Stanley Defined Contribution Master
Trust held in trust by Mellon Bank, N.A.  (Compl. ¶ 51.) On
August 31, 2008, the ESOP's assets were merged into the 401(k)
Plan, resulting in one ERISA plan.  (Compl. ¶ 52.) Pursuant to
that merger, all assets were transferred to the 401(k) Plan on
October 20, 2008.  (Compl. ¶ 52.)

    At the end of 2007, the total combined value of Company
stock in the Plans was approximately $2.2 billion.  (Compl. ¶

56.) At the end of 2008, the 401(k) Plan's value in Company stock was approximately $673.6 million.   (Compl. ¶ 56.)

D.   Factual Allegations

Plaintiffs allege Defendants breached their fiduciary duties to the Plans, their participants, and their beneficiaries during the Class Period in violation of ERISA sections 404(a) and 405. Despite warnings throughout 2007 that the subprime housing market was deteriorating and despite Morgan Stanley being aware of the crisis in 2007, Morgan Stanley continued investing in subprime and mortgage backed securities.   (Compl. ¶¶ 87-118.) As a result of the crisis and the Company's subprime investments, Morgan Stanley reported $9.4 billion in mortgage-related write-downs during 2007.   (Compl. ¶ 114.)

Despite knowing of those events and of market volatility, on January 2, 2008, Mack made the decision to fund all Company contributions to the Plans solely in Company stock.   (Compl. ¶¶ 119-29.) Plaintiffs allege that after the collapse of Bear Stearns in March 2008 and because the risks the Company would face if another banking institution failed, Defendants knew or should have known that Morgan Stanley stock was too risky an investment for the Plans.   (Compl. ¶¶ 126-27.) Concerns of the systemic problems in the banking and mortgage sectors increased

7

from March to July 2008.  (Compl. ¶¶ 138-55.)

Plaintiffs claim Morgan Stanley faced dire circumstances after Fannie Mae and Freddie Mac were placed into conservatorship, after Lehman Brothers collapsed, and when hedge funds made a multi-billion dollar run on Morgan Stanley during the week of September 15, 2008.  (Compl. ¶¶ 157-92.) As a result of these occurrences, Morgan Stanley lost $128.1 billion in prime brokerage deposits during the weeks of September 15, 2008 and September 22, 2008.[3]  (Compl. ¶¶ 194-96.) To avoid defaulting on its market commitments, Plaintiffs claim Morgan Stanley borrowed $107.1 billion from the Federal Reserve during the weeks of September 15, 2008 and September 22, 2008.[4]  (Compl. ¶ 197-201.)

According to the Complaint, while looking back on these events, Mack speculated that Morgan Stanley was "next in line" to collapse and that the Company was "close to really going out of business, call it near death."  (Compl. ¶¶ 159, 205.) And, on September 17, 2008 Morgan Stanley's CFO Colm Kelleher

---

[3] On September 15, 2008, Morgan Stanley executives informed the Federal Reserves that a loss of $21.1 billion during that two-week period would be catastrophic.  (Compl. ¶ 164.)

[4] Plaintiffs explain: "As of September 29, 2008, after borrowing $107.1 billion from the Federal Reserve . . . , Morgan Stanley reported $99.8 billion of liquidity.  Thus, without the $107.1 billion in emergency loans from the Federal Reserve, Morgan Stanley would have become illiquid sometime between September 15, 2008 . . . and September 29, 2008."  (Compl. ¶ 200.)

("Kelleher") told Mack, "We're going to be out of money on Friday." (Compl. ¶ 175.) After Mack asked Kelleher to recheck the numbers, Kelleher said, "Maybe we'll make it through early next week." (Compl. ¶ 175.) As a result of these concerns, Morgan Stanley began seeking a merger or an investor. (Compl. ¶¶ 174, 176, 180, 182, 186, 191.) On September 21, 2008, Mitsubishi UFJ, Japan's largest bank, agreed to invest $9 billion in Morgan Stanley, yet the Company still needed a source of additional funding. (Compl. ¶ 193.) After the Troubled Asset Relief Program ("TARP") was enacted, the government called in the heads of nine banks, including Morgan Stanley, to encourage them to take TARP financing; Mack was the first to accept. (Compl. ¶¶ 203-05.)

Plaintiffs claim that Defendants could have provided the Plans' participants with specific warnings, suspended or limited future investments of Company stock in the 401(k) Plan, liquidated Company stock in the Plans and converted those assets into cash, or funded Company contributions in cash. (Compl. ¶ 208.) Instead, Defendants did nothing even though Morgan Stanley's stock traded at $32.19 at the beginning of the Class Period, then to under $20 after Lehman Brothers' collapse, dropping to under $10 on October 10, 2008 and November 20, 2008, and remaining around $15 for the rest of 2008. (Compl. ¶ 209; Wise Decl. Ex. I.)

II.   DISCUSSION

A.   Legal Standards

1.   Rule 12(b)(6) Motion to Dismiss

For a complaint to survive dismissal under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility," the Supreme Court explained,

> [W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal quotation marks omitted).  "[I]n keeping with these principles," the Supreme Court stated,

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are

10

> no more than conclusions, are not entitled to the
> assumption of truth.  While legal conclusions can
> provide the framework of a complaint, they must be
> supported by factual allegations.  When there are
> well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  The court may also consider "well publicized stock prices."  Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 n. 8 (2d Cir. 2000).

### 2.  ERISA Claims for Breaches of Fiduciary Duties

ERISA "'protect[s] beneficiaries of employee benefit plans' . . . , by imposing fiduciary duties of prudence and loyalty on plan fiduciaries."  Citigroup, 662 F.3d at 135 (quoting Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 47 (2d Cir. 2009)). With respect to the duty of prudence, ERISA requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like

11

capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). With respect to the duty of loyalty, fiduciaries must act "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

A participant in retirement plan may bring a civil action against a person for breaching ERISA fiduciary duties. 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1109(a). However, "[a] person is only subject to these fiduciary duties 'to the extent' that the person, among other things, 'exercises any discretionary authority or discretionary control respecting management of such plan' or 'has any discretionary authority or discretionary responsibility in the administration of such plan.'" Citigroup, 662 F.3d at 135 (quoting 29 U.S.C. § 1002(21)(A)). Because "a person may be an ERISA fiduciary with respect to certain matters but not others," Harris Trust & Savings Bank v. John Hancock Mutual Life Insurance Co., 302 F.3d 18, 28 (2d Cir. 2002), "in suits alleging breach of fiduciary duty, the 'threshold question' is whether the defendants were acting as fiduciaries 'when taking the actions subject to complaint.'" Citigroup, 662 F.3d at 135 (quoting Pegram v. Herdrich, 530 U.S. 211, 226 (2000)).

**B.    Whether Plaintiffs Adequately Pled an Imprudence Claim**

Plaintiffs allege Defendants failed to manage prudently the Plans' assets and that Mack failed to fund prudently Company contributions.  (Compl. ¶¶ 231-39.) Defendants claim their actions are entitled to the <u>Moench</u> presumption that investing the Plans' assets in Company stock is prudent; and, since Morgan Stanley was not in dire circumstances, Plaintiffs cannot overcome that presumption of prudence.  The Court agrees.

> **1.    Whether Defendants Acted in a Fiduciary Capacity with Respect to Plan Investments**

Defendants concede that Jamesley is a named fiduciary for the 401(k) Plan and the ESOP.  (Defs.' Mot. Dismiss 10.) As Plan Administrator for the 401(k) Plan, Jamesley had the authority to impose processes, conditions, or limitations on the selection of investments by the 401(k) Plan participants.  See Citigroup, 662 F.3d at 136; 401(k) Plan § 8(d)(i).  As Plan Administrator for the ESOP, Jamesley is expressly given similar fiduciary responsibilities.  (ESOP § 9.02(b)-(c).) Defendants also concede that the Investment Committee is a named fiduciary for the 401(k) Plan.  (Defs.' Mot. Dismiss 10.) The Investment Committee selected and monitored the 401(k) Plan's investments.  (401(k) Plan § 8(b)(i).)

Relying on Citigroup, Defendants argue that Morgan Stanley,

13

MS & Co., the MS & Co. Board, and Mack were not fiduciaries with respect to Plaintiffs' imprudence claim because they lacked any fiduciary duties to add or eliminate investment funds and lacked the authority to veto investment options.  (Defs.' Mot. Dismiss 10-12.)  However, they were de facto fiduciaries of the Plans because Morgan Stanley, MS & Co., the MS & Co. Board, and Mack had the authority to determine whether to make contributions in either cash or Company stock.  In re Fannie Mae ERISA Litig., No. 09 Civ. 1350, 2012 WL 5198463, at *2 (S.D.N.Y. Oct. 22, 2012) (holding defendants were fiduciaries because they "had discretion to determine the extent of [the company's] annual contribution to the Plan, and whether the contribution would be made in . . . stock or cash"); Morgan Stanley, 696 F. Supp. 2d at 356-57; 401(k) Plan § 6(f); ESOP § 3.01(a). Accordingly, with respect to Company contributions, Plaintiffs have sufficiently plead the fiduciary status of Morgan Stanley, MS & Co., the MS & Co. Board, and Mack.[5]

---

[5] Plaintiffs claim Morgan Stanley is a named fiduciary because the Plans' named fiduciary is "Morgan Stanley's Global Director of Human Resources."  That is not the case.  Morgan Stanley, 696 F. Supp. 2d at 355-56.  Nor are Morgan Stanley or MS & Co. fiduciaries based on agency theory or respondeat superior. In re Bank of Am. Corp. Secs., Derivative, and ERISA Litig., 756 F. Supp. 2d 330, 346-47 (S.D.N.Y. 2010) (noting that, while there is split circuit authority on whether respondeat superior provides a viable theory of recovery in ERISA, "several district courts in this circuit have declined to apply" it).  Finally,

2.    The Moench Presumption

The Second Circuit recently adopted the Moench presumption "of compliance with ERISA when an ESOP [or an EIAP] fiduciary invests assets in the employer's stock."  Citigroup, 662 F.3d at 137, 138 (citing Moench v. Robertson, 62 F.3d 553 (3rd Cir. 1995)).  After examining a plan's terms and if the terms require or strongly favor investing in employer stock, a court applies the presumption.  Citigroup, 662 F.3d at 140; In re GlaxoSmithKline ERISA Litig., No. 11-2289, 2012 WL 3798260, at *1 (2d Cir. Sept. 4, 2012).  A court then "review[s the] defendants' decision to continue to allow Plan participants to invest in employer stock, in accordance with the [plan's] terms, for an abuse of discretion."  Gearren, 660 F.3d at 610 (citing Moench, 62 F.3d at 571); Citigroup, 662 F.3d at 138.

The Moench presumption "protect[s] fiduciaries from liability where 'there is room for reasonable fiduciaries to disagree as to whether they are bound to divest from company stock.'"  Citigroup, 662 F.3d at 140.  Nonetheless, "judicial scrutiny should increase with the degree of discretion a plan

---

although Plaintiffs claim that Morgan Stanley possessed the "authority to establish rules regarding the transfer of Company Stock," (Compl. ¶ 43), there is no evidence of that authority; rather that authority was conferred on the Plan Administrator. (ESOP § 3.08(c).)

gives its fiduciaries to invest." Citigroup, 662 F.3d at 138

(citation omitted). Therefore, once a court examines the plan's

terms and determines those terms "require or strongly favor

investment of company stock, . . . only circumstances placing

the employer in a dire situation that was objectively

unforeseeable by the settlor could require fiduciaries to

override the plan terms" and divest an EIAP or ESOP of employer

stock. In re GlaxoSmithKline, 2012 WL 3798260, at *1 (quoting

Citigroup, 662 F.3d at 140) (alterations omitted); Gearren, 660

F.3d at 610.

> 3. Whether the Moench Presumption Applies to the
>    Plans

Defendants assert that the Plans mandated or strongly

favored investment in Company stock. (Wise Decl. Ex. G, Summary

Plans Description, at 6 ("SPD"); 401(k) Plan § 8(b)(ii)(A); ESOP

§ 4.01(a).) Although the Plans allow for instances in which the

fiduciaries may choose not to invest in Company stock, those

terms closely mirror those in Citigroup.[6]   The court in

_____

[6] The 401(k) Plan explains: "The Morgan Stanley Stock Fund
["MSSF"] shall be invested and reinvested exclusively in Morgan
Stanley Stock, except that pending investments in Morgan Stanley
Stock, amounts held in the [MSSF] may be invested and reinvested
temporarily in interest-bearing, short-term investments . . . as
the Trustee deems suitable . . . . The [MSSF] may be liquidated,
removed or closed as an Investment Fund only by amendment to the
Plan." Compare 401(k) Plan § 8(b)(ii)(A) with In re Citigroup

Citigroup determined the fiduciary had little discretion even though the plan "authorized the holding of 'cash and short-term investments' . . . to facilitate the 'orderly purchase' of more company stock." Citigroup, 662 F.3d at 139.  See Slaymon v. SLM Corp., No. 10-4061, 2012 WL 6684564, at *1 (2d Cir. Dec. 26, 2012) (upholding the application of the Moench presumption even when the plans stated that "investments in the Stock Fund shall consist primarily of shares of [company s]tock"); see also In re GlaxoSmithKline, 2012 WL 3798260, at *2.  Similarly, the Plans offer Defendants little discretion.  Furthermore, participants' default investment option with the Plans is investment in Company stock.  See In re GlaxoSmithKline, 2012 WL 3798260, at *2.

Plaintiffs argue the Moench presumption is inapplicable because, even though a cash contributions to the ESOP could eventually be invested in Company stock, Morgan Stanley, MS & Co., the MS & Co. Board, and Mack had the discretionary authority to decide whether to make Company contributions in cash or stock. (Pls.' Opp'n 19-21.) The abuse of discretion standard still

---

ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762708, at *4 (S.D.N.Y. Aug. 31, 2009).  Similarly, the ESOP explains: "Employer Contributions . . . shall be invested in shares of Company Stock. Consistent with the Plan's status as an employee stock ownership . . . , the Trustee may keep such amounts of cash, securities or other property as it . . .  shall deem necessary or advisable as part of the Trust Fund, all within the limitations specified in the trust agreement."  (ESOP § 4.01(a).)

applies.  See In re Fannie Mae, 2012 WL 5198463, at *2-3
(applying the Moench presumption where defendants had the option
to contribute cash or company stock).  And, even if Company
contributions were made in cash, Jamesley and the Investment
Committee had no authority to avoid investment in Company stock.[7]
(SPD, at 6 ("The Company Match is allocated to the ESOP and may
be made in cash and invested in the [MSSF] or may be made in
shares of Morgan Stanley common stock contributed directly to the
[MSSF].").)  Even though there were limited instances in which
the Plans' fiduciaries could choose not to invest in Company
stock, the Plans strongly favored such investments; Defendants'
actions thereby are entitled to a presumption of prudence.  See
Taveras v. UBS AG, No. 12-1661, 2013 U.S. App. LEXIS 4061, at
*23-25 (2d Cir. Feb. 27,2013); see also Fisher v. JP Morgan Chase
& Co., 469 F. App'x 57, 59-60 (2d Cir. 2012).

    4.    Applying the Moench Presumption

    Plaintiffs allege that by September 15, 2008, Defendants

_____

[7] Plaintiffs argue that, had Company contributions been made
in cash, the Plan Administrator could have held the cash without
investing in Company stock.  (Pls.' Opp'n 19-20.) However, the
ESOP provides no such discretionary authority, instead merely
allows the Plan Administrator to suspend, delay, or limit a
participant's transfers into or out of Company stock if it is
necessary or advisable.  (ESOP § 7.04(d)(i).) It does not prevent
a cash contribution from being invested in the MSSF, as required
by the ESOP.  (See ESOP § 4.01; see also SPD, at 6.)

knew or should have known that Morgan Stanley's viability was in serious jeopardy.  (Pls.' Opp'n 18; Compl. ¶¶ 158-72.) Thereby, Plaintiffs assert, Defendants breached their duty of prudence by continuing to invest the Plans' assets in Company stock and by Morgan Stanley, MS & Co., the MS & Co. Board, and Mack contributing to the Plans in Company stock.  (Pls.' Opp'n 18.) Defendants assert, however, that Plaintiffs fail to plead that Jamesley or the Investment Committee knew of those circumstances and that the situation was not dire.  (Defs.' Reply 5.)

a.   Continuing to Invest in Company Stock

Plaintiffs make no specific allegations that Jamesley or the Investment Committee knew of the alleged dire circumstances, including the withdrawals of prime brokerage deposits following Lehman's collapse, what amount of withdrawals the Company considered catastrophic, and that the Federal Reserve loaned Morgan Stanley money.  Accordingly, Jamesley and the Investment Committee could not have breached their duty because the Complaint never claims they knew or should have known of those events.  Gearren, 660 F.3d at 610; In re UBS AG ERISA Litig., No. 08 Civ. 6696, 2012 WL 1034445, at *7 (S.D.N.Y. Mar. 23, 2012), aff'd, No. 12-1662, 2013 U.S. App. LEXIS 4016, at *10 (2d Cir. Feb. 27, 2013); In re Lehman Bros. Secs. & ERISA Litig., No. 09 MD 2017, 2011 WL 4632885, at *5 (S.D.N.Y. Oct. 5, 2011) (holding

the plan administrator "who worked in human resources" was not aware of Lehman's imminent collapse despite similar warning signs and circumstances).

Even if Jamesly and the Investment Committee knew of the circumstances at Morgan Stanley, those circumstances were not dire.  Courts have found that similar banking entities, with similar factual allegations, did not face dire circumstances during approximately the same time as the instant Class Period. See Citigroup, 662 F.3d at 141; In re Bank of Am., 756 F. Supp. 2d at 354-55; In re Bear Stearns, 763 F. Supp. 2d 423, 572-74 (S.D.N.Y. 2011); In re Lehman Bros., 2011 WL 4632885, at *5; In re Wachovia Corp. ERISA Litig., No. O9 Civ. 262, 2010 WL 3081359, at *14 (W.D.N.C. Aug. 6, 2010).  Simply because Lehman failed and suffered a run did not place Morgan Stanley at or near the brink of collapse.  In re Lehman Bros., 2011 WL 4632885, at *5 (explaining the failure of Bear Stearns and its suffered run did not render Lehman in a dire situation).  And, although Morgan Stanley borrowed money from the Federal Reserve in order to avoid defaulting when it suffered a run, that did not threaten its viability.  See In re Bear Stearns, 763 F. Supp. 3d at 573 (holding Bear Stearns was not facing collapse even though it necessitated government funding and saw its stock price drop $30 in one day).

Additionally, "[a]lthough proof of the employer's impending collapse may not be required to establish liability, 'mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the presumption.'"  Citigroup, 662 F.3d at 140 (quoting Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1099 (9th Cir. 2004)); Gearren, 660 F.3d at 610.  Morgan Stanley's share price fell from $50.95 to $16.04 from January 2, 2008 to the end of the Class Period, approximately a 79% drop.  (Wise Decl. Ex. I.) From the beginning to the end of the Class Period, the Company's stock dropped approximately 50%.  (Id.)  Similar stock declines have been insufficient to trump the Moench presumption.  Citigroup, 662 F.3d at 141 (50% drop); Gearren, 660 F.3d at 609-10 (64% drop); Fisher, 469 F. App'x at 59 (55% drop); In re Am. Exp. Co. ERISA Litig., 762 F. Supp. 2d 614, 628 (S.D.N.Y. 2010) (78% drop); In re Bank of Am., 756 F. Supp. 2d at 354 (83% drop). Even when the stock hit a low of $9.20 per share during the Class Period, Morgan Stanley's stock "still retained significant value."[8]  Fisher, 469 F. App'x at 59 (55% drop with a low of

---

[8] Although not dispositive, because Morgan Stanley's share price has rebounded since the end of the Class Period, the presumption of prudence is reinforced.  See Fisher, 469 F. App'x at 59; see also In re GlaxoSmithKline, 2012 WL 3798260, at *2. Because of the rebound, had Jamesley and the Investment Committee divested the Plans of Company stock, "they would have deprived

$15); <u>Slaymon</u>, 2012 WL 6684564, at \*1 (a low of $8.89 from a high of $57.98); <u>In re Bank of Am.</u>, 756 F. Supp. 2d at 354 (83% drop with a low of $5).

Despite the considerable problems in the financial sector during the Class Period, Morgan Stanley demonstrated several indicia of viability.  Although net revenues were down, in the first three quarters of 2008, Morgan Stanley earned a profit, with net revenues of $22.9 billion.  See Fisher, 469 Fed. App'x at 59-60; see also In re Am. Exp., 762 F. Supp. 2d at 628 ("[T]he company continued to have earnings and income and the stock price has subsequently rebounded significantly."); Wise Decl. Ex. D. The Company also paid dividends in each quarter of 2008.  In re GlaxoSmithKline, 2012 WL 3798260, at \*2; Wise Decl. Ex. D. Additionally, in September 2008, Mitsubishi Bank made a $9 billion investment in the Company, which is further indication Morgan Stanley would remain viable.  See In re Lehman Bros., 2011 WL 4632885, at \*5 n. 42; <u>see also</u> <u>In re UBS AG</u>, 2012 WL 1034445, at \*8, <u>aff'd</u> 2013 U.S. App. LEXIS 4016, at \*7-9; Compl. ¶ 193.

_____

Plan members of that rebound," and given the rebound their "decision not to divest . . . was not so extreme as to be contrary to . . . 'how a prudent fiduciary would operate.'"  In re Bear Stearns, 763 F. Supp. 2d at 574.  Accordingly, they "would almost certainly be sued for having overridden the plan terms."  In re Citigroup ERISA Litig., No. 07 Civ. 9790, 2009 WL 2762708, at \*13 (S.D.N.Y. Aug. 31, 2009); <u>In re Bank of Am.</u>, 756 F. Supp. 2d at 355 n. 2.

Moreover, Morgan Stanley's circumstances during the Class Period were wholly unlike those circumstances in which courts have found sufficient to overcome the Moench presumption.  See In re Fannie Mae, 2012 WL 5198463, at *4-5 (determining the defendants knew of a 99% decline in the value of the plan's assets and "all of [Fannie Mae's] assets were in the housing market"); In re AIG, Inc. ERISA Litig. II, No. 08 Civ. 5722, 2011 WL 1226459, at *7 (S.D.N.Y. Mar. 31, 2011) (determining the defendants knew of various circumstances that warranted further investigation before the stock fell 99%);  Veera v. Ambac Plan Admin. Comm., 769 F. Supp. 2d 223, 229-30 (S.D.N.Y. 2011) (determining the defendants knew of the dire circumstances due to a 99% price drop and  public announcements detailing the company's demise).  Since no dire circumstances existed during the Class Period, Defendants did not breach their duty of prudence by maintaining investment in Company stock.

b.   Funding the Plans with Company Stock

Plaintiffs claim Morgan Stanley, MS & Co., the MS & Co. Board, and Mack breached their duty both with the 2007 and 2008 Plan contributions when they chose to fund the Plans with Company stock rather than cash.  However, Plaintiffs make no allegations that the Company was in dire circumstances before September 15, 2008, and since the decision to fund Company contributions in

23

Company stock for the 2007 Plan year was made in January 2008,
Morgan Stanley, MS & Co., the MS & Co. Board, and Mack did not
breach their duty.  Moreover, the alleged breach occurred before
the Class Period began.  With respect to the 2008 Plan
contribution, which was made on December 31, 2008, Plaintiffs
make no allegations that the Company, save reporting its fourth
quarter loss on December 17, 2008, was in dire circumstances in
December 2008.[9]  (Compl. ¶ 211.) Accordingly, Morgan Stanley, MS
& Co., the MS & Co. Board, and Mack did not breach their duty of
prudence by funding the Plans with Company stock rather than
cash.

        C.    Whether Plaintiffs Adequately Pled a Disclosure Claim
        Plaintiffs claim that Morgan Stanley and Jamesley breached
their duty of loyalty by (1) failing to provide complete and
accurate information regarding Morgan Stanley's subprime exposure
and impending problems and (2) disseminating inaccurate,
incomplete, and materially misleading statements to participants
of the Plans.  (Compl. ¶¶ 240-51.)

-------------------

        [9] As discussed above, Morgan Stanley never was in dire
circumstances during the Class Period; therefore, Plaintiffs
claim against Morgan Stanley, MS & Co., the MS & Co. Board, and
Mack fails.

       1.   Duty to Provide Information

Although ERISA sets forth a "comprehensive set of 'reporting and disclosure' requirements," <u>Curtiss-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 83 (1995) (citing 29 U.S.C. §§ 1021-1031), ERISA does not require fiduciaries "to provide participants with information regarding the expected future performance of [company] stock." <u>Citigroup</u>, 662 F.3d at 142. ERISA does not "create a duty to provide participants with nonpublic information pertaining to specific investment options." <u>Citigroup</u>, 662 F.3d at 143; <u>Gearren</u>, 660 F.3d at 610. Accordingly, Plaintiffs' allegation that Morgan Stanley and Jamesley breached their duty of loyalty by not communicating the Company's subprime exposure and the Company's future outlook fails because they had no duty to communicate such information. See <u>Gearren</u>, 660 F.3d at 610.

       2.   Alleged Misstatements

Plaintiffs allege Morgan Stanley and Jamesley communicated with Plan participants through "SEC filings, annual reports, press releases and Plan documents . . . , which included and/or reiterated these statements." (Compl. ¶ 243.) The SEC filings were incorporated into the SPDs and Form S-8 registration statements. (Compl. ¶ 243.) These communications, Plaintiffs allege, were actionable misstatements. (Compl. ¶¶ 245-47.)

With respect to Morgan Stanley, Plaintiffs' argument fails because the Company was not "a Plan administrator responsible for communicating with Plan participants, [and] therefore [did not] act[] as a Plan fiduciary when making the statements at issue." Citigroup, 662 F.3d at 143-44; Gearren, 660 F.3d at 611 (holding defendants were not liable under ERISA because the alleged misstatements were made while "acting in a corporate, rather than ERISA fiduciary, capacity"); Fisher, 469 Fed. Appx. at 60. Accordingly, Morgan Stanley cannot be held liable under ERISA for those alleged misstatements.

Jamesley, as the Plan Administrator for the 401(k) Plan and the ESOP, was responsible for communicating with the Plans' participants.  (Compl. ¶¶ 25-26, 44.) Plaintiffs do not allege that Jamesley was responsible for the alleged misstatements but rather that those statements and omissions are actionable because she incorporated them by reference in communications with the Plans' participants.  (Compl. ¶ 243; Pls.' Opp'n 27-30.) Simply because the SPDs and Form S-8 registration statements incorporated the communications in question does not "give rise to ERISA liability absent allegations supporting the inference that individual Plan administrators made 'intentional or knowing misstatements . . . by incorporating SEC filings into the SPDs.'" In re GlaxoSmithKline, 2012 WL 3798260, at *3 (quoting Gearren,

660 F.3d at 611); Slaymon, 2012 WL 6684564, at *2.  Plaintiffs do not allege Jamesley knew or should have known about "Morgan Stanley's financial or operational health and future prospects" or that the SEC filings, annual reports, and press releases did not "provide complete and accurate information regarding Morgan Stanley's exposure to the subprime market."  (Compl. ¶¶ 245, 247.) Since, as applied to Jamesley, Plaintiffs provide no basis for their bald conclusions, Plaintiffs have not adequately stated a claim for relief based on the alleged misstatements. Citigroup, 662 F.3d at 144-45; Gearren, 660 F.3d at 611; Slaymon, 2012 WL 6685464 at *2.


   D.   Whether Plaintiffs Adequately Pled a Duty to Avoid
        Conflict of Interests Claim

     Plaintiffs claim Defendants breached their duty to avoid conflicts of interest by failing to engage timely third parties to make independent judgments concerning Plan investments and by placing their own interests over those of the Plans' participants.  (Compl. ¶¶ 252-59.) These alleged conflicts of interest existed because Defendants had significant personal investments in Company stock and were compensated based on the stock's performance.  (Compl. ¶ 223, 255-56.)

The Second Circuit has explained, "[We] refuse[] to hold that a conflict of interest claim can be based solely on the fact that an ERISA fiduciary's compensation was linked to the company's stock."  Citigroup, 662 F. 3d at 146 (citing In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005); In re WorldCom, Inc. ERISA Litig., 263 F. Supp. 2d 745, 768 (S.D.N.Y. 2003)).  Accordingly, since Plaintiffs "do not allege any specific facts suggesting that" Defendants' investments in Morgan Stanley "prompted [them] to act against the interests of Plan participants," Citigroup, 662 F. 3d at 145, Plaintiffs failed to state a claim for relief on this count.

     E.   Plaintiffs' Remaining Claims of Secondary Liability

     Plaintiffs also claim that (1) Morgan Stanley, MS & Co., the MS & Co. Board, and Mack failed to properly monitor other fiduciaries and (2) all Defendants are liable as co-fiduciaries. (Compl. ¶¶ 260-79.) "[T]hese secondary claims fail if plaintiffs are unable to survive Rule 12(b)(6) as to their primary claims." Gearren, 660 F.3d at 611.  Because, as explained above, Plaintiffs' primary claims fail, they have failed to state a claim under their two theories of secondary liability.

28

III. CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is GRANTED.  Plaintiffs may file a second amended complaint that presents adequate allegations of their disclosure claim against Jamesley and their theories of secondary liability.  All other claims are dismissed with prejudice because Plaintiffs are "unable to demonstrate that [they] would be able to amend [their] complaint in a manner which would survive dismissal."  Beachum v. Awisco New York Corp., 459 Fed. App'x 58, 59 (2d Cir. 2012) (quoting Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999).

Any amended complaint shall be filed within 45 days of the date of this Order. Failure to do so shall result in dismissal of this case in its entirety without further Order of the Court.
SO ORDERED.

Dated:    New York, New York

          March 28, 2013

                                    _Deborah A. Batts_
                                     Deborah A. Batts
                              United States District Judge